UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL PABON,                    :    CIVIL NO. **3:07-CV-1613**
                                :
          Plaintiff             :    (Judge Munley)
                                :
     v.                         :    (Magistrate Judge Smyser)
                                :
K. CHMIELEWSKI, et al.,         :
                                :
          Defendants            :

## REPORT AND RECOMMENDATION

The plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on September 4, 2007 (doc. 1).  The plaintiff is presently incarcerated at the State Correctional Institution at Mahanoy (SCI-Mahanoy), located near to Frackville, Pennsylvania, and his claims concern the circumstances of his confinement at that institution.

The complaint names as defendants the following individuals, all of whom allegedly are or were employees at

SCI-Mahanoy: K. Chmielewski, Deputy Superintendent; E. Klem, Superintendent; Gavin, Security Captain; T. Temperine, Deputy Superintendent; Ramer, School Principal; Derfler, Major; Mr. Vuksta, Unit Manager; Ms. Joy, Counselor; and Deb Wydra, Paralegal.  The complaint also names as a defendant Mrs. Moore, Deputy Secretary for the Eastern Region of the Pennsylvania Department of Corrections.

The plaintiff alleges in his complaint that the defendants violated his constitutionally-protected rights in various respects.  The crux of the plaintiff's claim is that some or all of the named defendants violated his due process rights under the Fourteenth Amendment to the Constitution by actively participating in or complying with a conspiracy to unjustifiably keep him detained in restrictive confinement at SCI-Mahanoy.  The plaintiff alleges that authorities at SCI-Mahanoy have kept him confined in the Restricted Housing Unit (RHU) since 2004 in bad faith and based upon unfounded justifications.

Specifically, the plaintiff asserts that he was removed from his prior place of incarceration, SCI-Smithfield, and on September 21, 2004 was sent to the RHU at SCI-Mahanoy based upon the stated justification that he posed an escape risk at SCI-Smithfield.  SCI-Smithfield officials had informed the plaintiff that he was suspected of being involved in a plot to escape with two other inmates; however, the plaintiff was never formally charged with attempted escape or with any other charge surrounding the alleged plot.  Nonetheless, he alleges, he was sent to SCI-Mahanoy predicated upon his alleged involvement in the escape plot.  He was confined in the RHU at SCI-Mahanoy from the time of his transfer in September of 2004 until he was released into the general population in November of 2007.

Although SCI-Mahanoy officials confined the plaintiff in the RHU based ostensibly upon his "escape risk" status (in light of the incident at SCI-Smithfield), the real justification for his continued confinement in the RHU was, he alleges, the desire of SCI-Mahanoy officials for retribution against him based on his prior assault of a correctional

officer while he was incarcerated at SCI-Huntingdon.  The plaintiff had been found guilty of assaulting an officer at SCI-Huntingdon.  The plaintiff alleges that although he served all of the disciplinary time imposed on this charge, SCI-Mahanoy authorities intended not to release him from the RHU into the general population and intended to never transfer him to another institution because of their motivation to seek further retribution.  He alleges that a number of the SCI-Mahanoy defendants have acknowledged this motivation.

The plaintiff contends that his confinement in the RHU constitutes cruel and unusual punishment in violation of the Eighth Amendment.  He contends that SCI-Mahanoy officials have continued to sanction him for past violations for which he had already been punished, and that this has been in violation of the double jeopardy proscription in the Fifth Amendment.  The plaintiff claims that defendant Moore, in her official capacity as Deputy Secretary for the Eastern Region of Pennsylvania, deprived him of his due process rights by failing to adequately

respond to his complaints about his long term confinement in the RHU.

The plaintiff claims that defendant Wydra violated his right of access to the courts by: 1) arbitrarily refusing his request to her that she afford him paralegal assistance (in his appeal of the underlying criminal sentence for which he is presently incarcerated) without properly evaluating or considering his limited competency in reading and writing the English language; and 2) refusing his second request for paralegal assistance thereby causing him to default on the one year time limitation on his habeas corpus action, after which time the claim was barred.

As relief, the plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

We address in this Order the defendants' motion to dismiss the complaint pursuant to Fed. R. C.P. 12(b)(6) (doc. 13) filed on December 14, 2007.

A motion to dismiss pursuant to Rule 12(b)(6)
challenges the legal sufficiency of the plaintiff's
complaint; the court must decide whether, even if the
plaintiff were able to prove all of his allegations, he would
be unable to prevail. *Mortensen v. First Fed. Sav. & Loan
Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In connection with
a Rule 12(b)(6) motion to dismiss for failure to state a
claim upon which relief can be granted, the burden is on the
moving party to show that there is no actionable claim.
*Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).  When
deciding a motion to dismiss, the court must accept all
material allegations of the complaint as true and draw all
inferences in the light most favorable to the plaintiff.
*Pennsylvania House, Inc. v. Barrett*, 760 F. Supp. 439, 449
(M.D. Pa. 1991).  However, "conclusory allegations of law,
unsupported conclusions and unwarranted inferences need not
be accepted as true." *Id*. at 449-50.

The defendants claim that they are entitled to Eleventh Amendment immunity from the plaintiff's official capacities claims.

Claims against state officials in their official capacities for damages are treated as suits against the state and are barred by the Eleventh Amendment.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State School & Hospital Halderman*, 465 U.S. 89 (1984).  Since all of the defendants in this case are state officials employed by the Pennsylvania Department of Corrections, all claims for monetary damages against them in their official capacities are barred by the Eleventh Amendment.  However, claims against the defendants in their official capacity for prospective injunctive relief and the claims against the defendants in their individual capacity for monetary damages are not barred by the Eleventh Amendment.

The defendants contend that the plaintiff's due process claims with regard to his confinement in the RHU

should be dismissed because the plaintiff did not have a liberty interest protected by the Due Process Clause in not being placed in the RHU without any form of hearing or decision-making process.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  A due process claim requires a two part analysis.  First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

The Supreme Court has held that the transfer of an inmate to administrative segregation does not implicate an interest that is independently protected by the Due Process Clause.  *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

8

"[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Id*.

Prior to *Sandin v. Conner, infra*, in determining whether prison regulations created liberty interests, courts examined the regulations for explicitly mandatory language and specific substantive predicates giving rise to a reasonable expectation that an event would not occur unless the circumstances identified in the regulations were met. *Id*. at 472; *see also Stephany v. Wagner*, 835 F.2d 497 (3d Cir.), *cert. denied*, 487 U.S. 1207 (1988).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when state prison regulations can create liberty interests protected by the Due Process Clause, modified the *Hewitt* analysis.  The Court held that:

> States may under certain circumstances create
> liberty interests which are protected by the
> Due Process Clause.  But these interests will
> be generally limited to freedom from

>       restraint which, while not exceeding the
>       sentence in such an unexpected manner as to
>       give rise to protection by the Due Process
>       Clause of its own force, nonetheless imposes
>       atypical and significant hardship on the
>       inmate in relation to the ordinary incidents
>       of prison life.

*Id.* at 483-84.


In *Sandin*, the inmate was sentenced to thirty days of disciplinary confinement in a disciplinary segregation unit.  As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains.)" *Id.* at 494 (Breyer, J. dissenting).  The Court concluded that the inmate's thirty days in the "Special Holding Unit" did not impose the type of atypical significant deprivation of a liberty in which the state may conceivably create a liberty interest. *Id.* at 486. The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored

conditions imposed on inmates in administrative and
protective custody; that based on a comparison of inmates
inside and outside of disciplinary segregation, placement in
segregation for thirty days did not work a major disruption
in his environment; that disciplinary action did not
inevitably affect the duration of the inmate's sentence; and
that the "regime to which he was subjected was within the
range of confinement to be normally expected for one serving
an indeterminate term of 30 years to life." *Id.* at 486-87.

     "After *Sandin,* it is clear that the touchstone of the
inquiry into the existence of a protected, state-created
liberty interest in avoiding restrictive conditions of
confinement is not the language of regulations regarding
those conditions but the nature of those conditions
themselves 'in relation to the ordinary incidents of prison
life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005)(quoting
*Sandin, supra,* 515 U.S. at 484).

11

In deciding whether a protected liberty interest exists under *Sandin*, we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether or not a protected liberty interest exists under *Sandin* requires inquiry into the specific facts of the case. *Id.* at 533.

In the instant case, the plaintiff was placed in administrative custody upon his arrival at SCI-Mahanoy in September of 2004. (doc. 1, at 3). The plaintiff was subsequently moved from administrative custody to disciplinary custody in February 2006 for 270 days before being moved back into administrative custody for four months. (doc. 21 at 3). The plaintiff was then moved to disciplinary custody in March of 2007 for 240 days before being introduced into the general population in November of 2007. *Id.* The plaintiff spent seventeen months in administrative custody. The plaintiff is currently in the general population.

In considering whether the complaint states a due process claim upon which relief can be granted, we focus on the time the plaintiff was in administrative custody because the plaintiff is challenging his confinement in administrative custody and because the plaintiff has not alleged that he did not receive due process in connection with his periods of confinement in disciplinary custody.

The plaintiff was in administrative custody for less than two consecutive years.  The plaintiff has failed to allege that that he was subjected to atypical conditions or significant hardships in comparison to the ordinary incidents of prison life.  Therefore, the plaintiff did not have a liberty interest protected by the Due Process Clause in remaining free from administrative custody in the RHU for less than two years. *See, e.g., Griffin v. Vaughn*, 112 F.3d 703, 707 (3d. Cir. 1997)(holding that prisoner who was confined in administrative custody for a period of fifteen months was not deprived of a liberty interest and was not entitled to procedural due process).  Accordingly, the

plaintiff has failed to state a claim upon which relief can

be granted pursuant to Federal Rule of Civil Procedure

12(b)(6) on his due process claims.[1]


     The plaintiff also fails to state a claim for which

relief can be granted on his Fifth Amendment double jeopardy

claim and his Eighth Amendment cruel and unusual punishment

claim.


     The plaintiff's double jeopardy claim is without

merit because a disciplinary hearing is not a prosecution for

double jeopardy purposes and because sanctions imposed as a

result of such hearings do not bar future criminal

prosecution. *U.S. v. Newby*, 11 F. 3d 1143, 1144 (3d. Cir.

1993).  Prison disciplinary proceedings are used to determine

whether prison rules have been broken and to maintain

institutional order, rather than a prosecution for criminal

---

[1]  The defendants claim that the statute of limitations has
run on plaintiff's due process claims.  However, since we have
determined that the plaintiff fails to state a due process
claim upon which relief can be granted we do not address the
statute of limitations issue.

14

conduct. *Id.* Since disciplinary sanctions are not prosecutions for criminal conduct, the plaintiff fails to state a meritorious double jeopardy claim.

The plaintiff's Eighth Amendment cruel and unusual punishment claim is also not a claim upon which relief can be granted. The Eighth Amendment prohibits any punishment which violates civilized standards of humanity and decency. *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992). To prove a violation of the Eighth Amendment, an inmate must show that he has been deprived of the "minimal civilized measures of life's necessities." *Id.(quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The plaintiff does not allege conditions of his confinement that deprived him of the minimal civilized measures of life's necessities. Merely being confined in administrative or disciplinary custody without more does not violate the Eighth Amendment. The plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted.

The plaintiff also fails state a claim against defendant Wydra for which relief can be granted for denial of access to the courts.

In order for a plaintiff to state a claim for denial of access to the courts, the plaintiff must allege 1) a non-frivolous, underlying claim; 2) that the official acts frustrated the litigation; 3) a remedy that may be awarded but that is not otherwise available in a future suit. *Christopher v. Harbury*, 536 U.S. 403, 415 (U.S. 2002). The underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant. *Id.* at 416.

The plaintiff claims that he was not given legal assistance while he was in administrative custody and subsequently lost his opportunity for a writ of certiorari from the United States Supreme Court and also for a collateral attack on his conviction in federal court. The plaintiff, however, has not made any allegations in his

16

complaint regarding the underlying claim or claims that he

wished to present in his petition for a writ of certiorari or

in his collateral attack on his conviction.  The plaintiff

has not alleged a non-frivolous underlying claim.

Accordingly, the plaintiff has failed to state an access to

the courts claim upon which relief can be granted.[2]

"[I]f a complaint is subject to a Rule 12(b)(6)

dismissal, a district court must permit a curative amendment

unless such amendment would be inequitable or futile."

*Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.

2008).  We will recommend that the plaintiff be given leave

to file an amended complaint to attempt, if appropriate, to

---

[2].  The defendants contend that the plaintiff's access
to the courts claim is barred by *Heck v. Humphrey,* 512 U.S.
477 (1994).  However, to succeed on his access to the courts
claim, the plaintiff would not need to prove the
unlawfulness of his conviction.  Rather, he would need only
establish that he had a non-frivolous underlying claim that
was frustrated.  Thus, even were we to conclude that the
plaintiff stated an access to the courts claim upon which
relief could be granted we could not conclude as a matter of
law that that claim is barred by *Heck.* The defendants also
claim qualified immunity.  Since we conclude that the
plaintiff has failed to state a claim upon which relief can
be granted it is not necessary to address qualified
immunity.

state an access to the courts claim upon which relief may be granted and to attempt, if appropriate, to state a due process claim upon which relief may be granted based on being subject to atypical conditions or significant hardships in comparison to the ordinary incidents of prison life.

Based on the foregoing, it is recommended that the defendants' motion to dismiss (doc. 13) be **GRANTED**.  It is also recommended that the plaintiff be granted leave to file an amended complaint to attempt to state an access to the courts claim upon which relief can be granted and a due process claim upon which relief can be granted.

_____   */s/ J. Andrew Smyser*
                                    J. Andrew Smyser
                                    Magistrate Judge

Dated:  April 22, 2008.